UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KUSHAWN S. MILES,

        Plaintiff,

v.

IONIA CORRECTIONAL
FACILITY et al.,

        Defendants.
_____/

Case No. 1:18-cv-738

Honorable Robert J. Jonker

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Ionia Correctional Facility. The Court will also dismiss Plaintiff's claim that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment and Plaintiff's claim that he was denied procedural due process in violation of the Fourteenth Amendment. The Court will serve the complaint against Defendants Schiebner, Christiansen, Larson, Turner, Novak, and

Rykse. Plaintiff has not supplied sufficient information to permit service upon the John Doe defendant described as the Ionia Correctional Facility transfer coordinator.

## Discussion

I.   Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Michigan. Plaintiff sues ICF deputy wardens James Schiebner and John Christiansen; Residential Unit Manager Jeffrey Larson; Prisoner Counselor Marcus Turner; Librarian Joe Novak; Lieutenant S. Rykse; and a John Doe defendant identified as the transfer coordinator at ICF. Those are the only defendants referenced in the body of the complaint. The caption, however, lists the Ionia Correctional Facility as a defendant.

Plaintiff alleges that he was subjected to a tirade peppered with racial epithets from Defendant Turner on March 3, 2016. As part of the tirade, Plaintiff claims Defendant Turner informed all of the other inmates in his unit that they would be subject to additional scrutiny and shakedowns because of Plaintiff. Plaintiff, that same day, prepared a grievance against Defendant Turner regarding the tirade. He also submitted a typewritten complaint to Defendant Schiebner, Defendant Christiansen, other deputy wardens, the civil service department, prisoner affairs, the state police, and the MDOC Director.

Plaintiff offers the complaint and grievance as protected conduct that motivated retaliatory adverse action by the Defendants. According to Plaintiff, Defendants Turner and Larson pressured Plaintiff into dropping the grievance and the complaint or he would suffer consequences including loss of his legal writer job and transfer to a less desirable prison. Plaintiff

2

claims Defendant Turner also wrote a false Class III misconduct against him. The misconduct was ultimately thrown out.

Although Plaintiff's grievance was unremarkable, his complaint was neatly typewritten. The ICF authorities noted that it had been typewritten the same day as the incident and surmised that Defendant must have used a legal writer laptop for his personal complaint. Defendant Novak, at the behest of Defendant Schiebner, wrote a Class II misconduct against Plaintiff for misuse of state property and fired Plaintiff from his legal writer job. Plaintiff claims the misconduct was false. He claims he paid another prisoner to type the complaint for him. He refused to provide the name of the prisoner for the prisoner's protection.

Defendant Rykse served as the misconduct hearing officer. Plaintiff claims Rykse was part of the retaliatory false misconduct scheme. Rykse refused to consider Plaintiff's evidence. He found Plaintiff guilty and imposed 30 days' loss of privileges. Defendant Christiansen then refused to even consider Plaintiff's appeal of Rykse's decision.

Plaintiff claims Defendants Schiebner, Larson, and Turner then signed off on papers that resulted in his transfer to the Michigan Reformatory, a less desirable facility, by the ICF Transfer Coordinator.

Plaintiff seeks a judgment declaring that Defendants violated his constitutional rights. Plaintiff also seeks injunctive relief compelling Defendants to reverse the misuse of state property misconduct. Additionally, Plaintiff demands transfer to one of seven identified MDOC facilities. Finally, Plaintiff seeks compensatory and punitive damages totaling hundreds of thousands of dollars.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants have violated his rights under the First Amendment and the due process and equal protection guarantees of the Fourteenth Amendment.

### III. Claims Against the Ionia Correctional Facility

The Ionia Correctional Facility is not an entity separate from the MDOC. It is one of several "buildings used by the MDOC to house prisoners." *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934, at *7 (W.D. Mich. Oct. 28, 2013). A specific correctional facility is "not the proper public entity for suit." *Id.*; *see also Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) ("The district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983."); *Belcher v. Ottawa County Adult Corr. Facility*, No. 1:09-cv-173, 2009 WL 1163412, at *2 (W.D. Mich. Apr. 28, 2009) ("The Ottawa County Adult Correctional Facility is a building, not an entity capable of being sued in its own right.").

Although the Ionia Correctional Facility is, effectively, the MDOC, the MDOC is not a proper substitute for the Ionia Correctional Facility. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.

1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

Plaintiff's claims against the Ionia Correctional Facility will be dismissed.

IV.     Equal Protection Claims

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").[1]

---

[1] Although Plaintiff's complaints start with Defendant Turner's March 3, 2016, tirade that included racial epithets, those allegations do not form the basis of Petitioner's equal protection claim. His equal protection claims are directed at Defendant Rykse, Christiansen, Novak, and Schiebner for their role in the "false" misconduct. (Compl., ECF No. 1, PageID.11-12.) Defendant Turner is implicated in the claim only to the extent he violated, conspired to violate, or failed to prevent a violation of, Petitioner's First Amendment rights by retaliation, not because of racial slurs. (*Id.*, PageID.12, ¶¶ 36, 37.) Moreover, an allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a constitutional violation) (citing *Torres v.*

Although Plaintiff alleges that Defendants treated him poorly, he does not allege that he was treated differently than others who were similarly situated. Absent such allegations of disparate treatment, Plaintiff has failed to state an equal protection claim.

V.       Procedural Due Process Claims

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff claims that he was wrongfully terminated from his prison job without due process. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir.

---

*County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude; *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim).

1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Similarly, Plaintiff has no protected liberty or property interest in a particular program or program classification. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom*, 888 F.2d at 374 (no constitutional right to prison employment); *Ivey*, 832 F.2d at 955 ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).

Accordingly, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment due process rights resulting from the loss of his job.

Plaintiff also claims Defendants violated his due process rights when they imposed "loss of privileges" punishment for the false misuse of state property misconduct. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter*, 69 F. App'x at 680; *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

VI. Other Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

9

Plaintiff alleges that his filing of the grievance and typewritten complaint are protected conduct. He alleges that the loss of his job, punishment for false misconduct, and transfer to a less desirable facility constitute adverse actions. He alleges that the adverse actions were motivated by the filing of the typewritten complaint. At this stage of the proceedings, Plaintiff's allegations suffice to state a claim against the Defendants.

Moreover, Plaintiff claims that Defendants accomplished their retaliation by framing him with false evidence. At this stage of the proceedings, such allegations may suffice to state some type of substantive due process or malicious prosecution claim. *See, e.g., Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988) *overruled in other part by Thaddeus–X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *Johnson v. Ward*, 43 F. App'x 779 (6th Cir. 2002).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Ionia Correctional Facility will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's equal protection and procedural due process claims will also be dismissed for failure to state a claim. The Court will serve the complaint against Defendants Schiebner, Christiansen, Larson, Turner, Novak, and Rykse, with respect to Plaintiff's remaining claims.

An Order consistent with this Opinion will be entered.


Dated:  __September 6, 2018__          /s/ Robert J. Jonker
                 ROBERT J. JONKER
                 CHIEF UNITED STATES DISTRICT JUDGE